Jihee Ahn (SBN 292659)
**HARRIS BRICKEN SLIWOSKI LLP**
444 S. Flower Street, 13th Floor
Los Angeles, CA 90071
Telephone: (424) 273-5500
Email: jihee@harrisbricken.com

*Attorneys for Plaintiff*
CORY BENSON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY BENSON, an individual, | Case No. 2:22-cv-2760 |
| Plaintiff, | **COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| CALTO ENTERPRISES, INC., a California corporation; WEARC GLOBAL BUILD, LLC, a California limited liability company; ZHONGMING XIANG, an individual; RAYMOND HUNG, an individual; BIN QUAN, an individual; QUANHAO LIN, an individual; GUANG LIU, an individual; LONGBO LIU, an individual; and DOES 1-20, inclusive, | |
| Defendants. | |

Plaintiff CORY BENSON ("Plaintiff" or "Benson"), an individual, complains and alleges against Defendants CALTO ENTERPRISES, INC. ("Calto"), a California corporation, WEARC GLOBAL BUILD, LLC ("Wearc"), a California limited liability company, ZHONGMING XIANG, an individual, RAYMOND HUNG, an individual, BIN QUAN, an individual, QUANHAO LIN, an individual, GUANG LIU, an individual, LONGBO LIU, an individual, and DOES 1-20, inclusive (collectively, "Defendants"), as follows:

## I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is, and all times mentioned herein was, a citizen and resident of the State of Washington.

2. Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein Calto was a corporation founded under the laws of the State of California, whose primary corporate offices are located at 2691 Richter Avenue, Suite 107, Irvine, CA 92606.

3. Plaintiff is informed and believes, and based thereon alleges, that Zhongming Xiang is a current, or former, owner of Calto.

4. Plaintiff is informed and believes, and based thereon alleges, that Raymond Hung is a current, or former, owner of Calto.

5. Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein Wearc was a limited liability company founded under the laws of the State of California, whose primary corporate offices are located at 2226 Greenfield Avenue, Arcadia, CA 91006.

6. Plaintiff is informed and believes, and based thereon alleges, that Bin Quan is a current, or former, owner of Wearc.

7. Plaintiff is informed and believes, and based thereon alleges, that Quanhao Lin is a current, or former, owner of Wearc.

8. Plaintiff is informed and believes, and based thereon alleges, that Guang Liu is a current, or former, owner of Wearc.

9. Plaintiff is informed and believes, and based thereon alleges, that Longbo Liu is a current, or former, owner of Wearc.

10. Plaintiff is informed and believes, and based thereon alleges, that each and every defendant sued herein was at all times mentioned herein the agent or employee of each of the remaining defendants and was, at all times, acting within the purpose and scope of its agency and/or employment. As such, whenever any reference is made in this Complaint to any act of any defendant(s), that allegation shall mean that each defendant acted individually and jointly with the other defendants.

11. This Court has personal jurisdiction over Defendants due to their substantial contacts with California, as alleged herein. Both Calto and Wearc have their primary corporate offices in Irvine, California, and Arcadia, California, and Zhongming Xiang, Raymond Hung, Bin Quan, Quanhao Lin, Guang Liu, and Longbo Liu are current or former owners of Calto and/or Wearc.

12. Pursuant to California Code of Civil Procedure § 395(a), venue is proper in this Court because both Calto and Wearc have their primary corporate offices in Irvine, California and Arcadia, California, and Zhongming Xiang, Raymond Hung, Bin Quan, Quanhao Lin, Guang Liu, and Longbo Liu are current or former owners of Calto and/or Wearc.

## II. FACTUAL ALLEGATIONS

13. On or around September 1, 2021 Plaintiff was approached by an individual named "Janny" with phone number +61 452 592 384 on WhatsApp Messenger, a mobile communications application ("Scammer 1"). Plaintiff is informed and believes, and based thereon alleges, that Zhongming Xiang, Raymond Hung, Bin Quan, Quanhao Lin, Guang Liu, and/or Longbo Liu falsely identified themselves as Janny to Plaintiff. Scammer 1 claimed to be an individual who had some investing success based on financial advice from her uncle.

14. On September 22, 2021, Scammer 1 guided Plaintiff to open an account with a foreign exchange market ("forex") broker, IH Global Ltd. ("IH Global"), and its corresponding website, IHGlobal.net.

15. Scammer 1 advised Plaintiff that IH Global and IHGlobal.net provided their users with a direct plug-in to the MetaTrader 5 trading platform, which is a free application for traders to perform technical analysis and trading operations in the forex and other exchange markets.

16. Scammer 1 then advised Plaintiff to deposit money into his "trading account" with IH Global by doing the following:

> "The procedure of deposit is like this, when you want to make deposit, please make the following information for us
> 1. Your currency
> 2. The amount that you will deposit
> 3. When will you make the deposit (1 hour in advance is appreciated)
> Then we could provide you the corresponding bank account
> When your transfer is confirmed, the fund will be credited to your trading account immediately.
> That means if you want to make deposit, please contact us here directly, then we could provide the bank account for you, then you can use your own bank account to make wire transfer or your online banking to transfer, thank you"

17. On or around September 24, 2021, Plaintiff was contacted by a second individual with phone number +44 7859 480919 on WhatsApp Messenger who presented themselves as a representative of IH Global ("Scammer 2"). Plaintiff is informed and believes, and based thereon alleges, that Zhongming Xiang, Raymond Hung, Bin Quan, Quanhao Lin, Guang Liu, and/or Longbo Liu falsely identified themselves as this IH Global representative to Plaintiff.

18. In September 2021, Scammer 1 instructed Plaintiff to deposit funds in Plaintiff's "trading account" with IH Global. Scammer 1 then advised Plaintiff she would instruct him to make certain "trades" on IHGlobal.net based on financial advice from her uncle, and she reassured Plaintiff he could withdraw his investment or profit from his "trading account" at any time.

19. From September 2021 through January 2022, Scammer 2 provided various wire transfer instructions to several different business bank accounts in the name of several different companies. Plaintiff made a total of ten (10) bank wire transfers to seven (7) different business bank accounts, in the total amount of $1,100,000.

20. From September 2021 through January 2022, Scammer 1 also instructed Plaintiff to open MetaTrader 5 and make certain forex "trades" on IHGlobal.net. These trades typically showed as profitable according to the MetaTrader 5 application Plaintiff was instructed to use.

21. On December 17, 2021, Scammer 1 instructed Plaintiff to make such a trade. Shortly of initiating the trade, the shown price fell abruptly and significantly, which triggered a so-called "forced liquidation" of Plaintiff's "trading account." The application showed this as resulting in an apparent negative balance of -$462,788 for Plaintiff.

22. Scammer 2 contacted Plaintiff to advise the negative balance needed to be replenished within seven days. Scammer 1, who falsely advised Plaintiff she also had a forced liquidation sale of her account, encouraged Plaintiff to do as she was doing and to "solve the negative balance" by depositing more money into Plaintiff's "trading account."

23. Over the next several weeks, Scammer 2 instructed Plaintiff to make additional deposits into his "trading account" to cover the negative account balance and to attempt to earn the money back through future forex "trades."

24. The application showed that the next several trades were successful and had built Plaintiff's balance back up to approximately $784,000. On March 3, 2022, Scammer 1 instructed Plaintiff to again open MetaTrader 5 and make another forex "trade" on IHGlobal.net. Plaintiff made the trade and saw the price again fall abruptly and significantly, which again triggered a forced liquidation of Plaintiff's "trading account." The application showed this as resulting in an apparent negative balance of -$106,000 for Plaintiff.

25. On that day, Plaintiff was watching the market price from a source other than the MetaTrader 5 application that Scammer 1 and Scammer 2 had instructed him to use. Plaintiff noticed the price on that application was different than the real market price, and he realized Scammer 1 and Scammer 2 were manipulating their application in real time.

## FIRST CAUSE OF ACTION

**(Fraud Against All Defendants)**

26. Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in Paragraphs 1 through 25 above.

27. Defendants knowingly made false and fraudulent statements of material fact to Plaintiff by representing that they could provide Plaintiff with an investing opportunity by helping him create a counterfeit "trading account," instructing him to deposit funds into the counterfeit "trading account" by wiring those funds to different business bank accounts in the name of several different companies and instructing him to make certain forex "trades" on their counterfeit platform, IHGlobal.net.

28.     The false and fraudulent representations of material fact include: (a) that Defendants could help Plaintiff create a counterfeit "trading account" for Plaintiff's benefit, (b) that Plaintiff would receive a return on investment in the form of profits that would be sent to his "trading account" that could be withdrawn or used to make further trades, and (c) that Plaintiff could withdraw his investment or profit at his discretion.

29.     Defendants knew the above-described misrepresentations made to Plaintiff were false and fraudulent when they were made.

30.     Defendants made the above-described misrepresentations and engaged in such conduct to induce Plaintiff into relying on the misrepresentations.

31.     Plaintiff relied on Defendants' misrepresentations.

32.     Defendants are jointly and severally liable for the misrepresentations made to Plaintiff because they each played an essential role working in concert to further the unlawful, fraudulent scheme.

33.     Defendants actively and purposefully concealed their actions from Plaintiff by, among other things, purporting to provide Plaintiff with an investing opportunity by helping him create a counterfeit "trading account," instructing him to deposit funds into the counterfeit "trading account" by wiring those funds to different business bank accounts in the name of several different companies, and instructing him to make certain forex "trades" on their counterfeit platform, IHGlobal.net.

34.     As a result of his reliance, Plaintiff has incurred damages of over $1 million that he paid to Defendants between September 2021 and March 2022.

35.     Defendants engaged in fraudulent and/or malicious conduct, in violation of public policy, so as to justify an award of exemplary and punitive damages in an amount according to proof.

## SECOND CAUSE OF ACTION

**(Unjust Enrichment Against All Defendants)**

36.     Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in Paragraphs 1 through 35 above.

37.     Plaintiff conferred a benefit upon Defendants through the payment of funds to a counterfeit "trading account" in exchange for their promise that those funds would be available for him to make certain forex "trades" for his benefit.

38.     Plaintiff's payments to Defendants were ultimately distributed to Defendants, to profit off of Plaintiff's investment capital.

39.     Defendants voluntarily accepted and retained the benefit of Plaintiff's payments.

40.     Defendants are jointly and severally liable for orchestrating the scheme to steal Plaintiff's investment capital as part of an unlawful and fraudulent scheme, which induced Plaintiff to confer benefits on Defendants.  Each of the Defendants played an essential role as the orchestrators of the unlawful and fraudulent scheme described above.

41.     Because Defendants knowingly created and orchestrated this scheme with the sole goal of stealing Plaintiff's capital investments, the circumstances are such that it would be inequitable to allow Defendants to retain the benefit of the monies paid.

42.     As a direct and proximate result of the above-described conduct, Plaintiff has been damaged and Defendants have been unjustly enriched by at least $1,100,000 from September 2021 through March 2022.

## THIRD CAUSE OF ACTION

**(Violation of 18 U.S.C. § 1962(c) Against All Defendants)**

43.     Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in Paragraphs 1 through 42 above.

44.     All Defendants formed an association-in-fact "enterprise" ("the Fraudulent Enterprise") as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce.

45.     The members of the Fraudulent Enterprise are and have been joined in a common purpose, have relationships with and among each other, and have associated through time sufficient to permit those associated to pursue the enterprise's purpose.  Defendants forged symbiotic relationships and each defendant needed and depended upon the participation of the other defendants to accomplish their common purpose of defrauding Plaintiff through fraudulent conduct.

Specifically, the false and fraudulent representations of material fact include: (a) that Defendants could help Plaintiff create a counterfeit "trading account" for Plaintiff's benefit, (b) that Plaintiff would receive a return on investment in the form of profits that would be sent to his "trading account" that could be withdrawn or used to make further trades, and (c) that Plaintiff could withdraw his investment or profit at his discretion.

46. Each Defendant has been employed by and/or associated with the Fraudulent Enterprise.

47. Each Defendant has knowingly conducted and/or participated in, directly or indirectly, the conduct of the Fraudulent Enterprise's affairs through a pattern of racketeering activity consisting of numerous and repeated violations of the federal wire fraud statute, 18 U.S.C. § 1343, involving the use of interstate wire facilities to transfer money to execute a scheme to defraud. These acts, committed by interstate wire, included receiving wire payments that the Fraudulent Enterprise misrepresented: (a) would be held in Plaintiff's "trading account" for future trading, (b) would be available for Plaintiff to invest so she could receive a return on investment in the form of profits that would be sent to his "trading account" that could be withdrawn or used to make further trades, (c) could be withdrawn by Plaintiff at his discretion, and (d) would otherwise remain in Plaintiff's account for his own use.

48. Plaintiff has been injured by reason of the above-described conduct in that the members of the Fraudulent Enterprise have stolen more than $1 million of Plaintiff's investment capital.

**FOURTH CAUSE OF ACTION**

**(Violation of 18 U.S.C. § 1962(d))**

49. Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in Paragraphs 1 through 48 above.

50. The Fraudulent Enterprise is an association-in-fact "enterprise," as that term is defined in 18 U.S.C § 1961(4), that engages in, and the activities of which affect, interstate commerce.

51. Defendants have willfully combined, conspired, and agreed to violate 18 U.S.C. § 1962(c), that is to conduct and/or participate in, directly or indirectly, the conduct of the Fraudulent Enterprise's affairs through a pattern of racketing activity consisting of numerous and repeated violations of the federal wire fraud statute, 18 U.S.C. § 1343, involving the use of interstate wire facilities to transfer money to execute a scheme to defraud. These acts, committed by interstate wire, included receiving $1,100,000 of payments the Fraudulent Enterprise misrepresented: (a) would be held in Plaintiff's "trading account" for future trading, (b) would be available for Plaintiff to invest so she could receive a return on investment in the form of profits that would be sent to his "trading account" that could be withdrawn or used to make further trades, (c) could be withdrawn by Plaintiff at his discretion, and (d) would otherwise remain in Plaintiff's account for his own use.

52. Defendants knew of, agreed to, and acted in furtherance of the overall objective of the conspiracy by facilities this fraudulent scheme wherein they induced Plaintiff to wire money for investment into IHGlobal.net when their sole goal was to steal Plaintiff's investment capital.

53. Plaintiff has been injured by reason of the above-described conduct in that the members of the Fraudulent Enterprise have stolen more than $1 million of Plaintiff's investment capital.

## FIFTH CAUSE OF ACTION

**(Request for Temporary Injunction Against All Defendants)**

54. Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in Paragraphs 1 through 53 above.

55. Plaintiff seeks to freeze Defendants' assets and enjoin Defendants from dissipating assets pending disposition of this action.

56. There is a substantial likelihood that Plaintiff will prevail on the merits of its fraud, unjust enrichment, and RICO claims because Defendants perpetrated a fraudulent scheme whereby they created and operated an illusory forex foreign exchange scheme with the sole intention of inducing Plaintiff to invest so they could steal Plaintiff's investment capital and divert it for their own use.

57. If the Court does not grant a preliminary injunction, Defendants will continue activities that dissipate their assets such that Plaintiff will not be able to recover his investment capital, causing irreparable injury to Plaintiff.

58. Defendants will not suffer undue hardship or loss as a result of the issuance of preliminary injunction.

59. Issuance of a preliminary injunction would not adversely affect the public interest.

60. Plaintiff seeks waiver of the requirement to post a bond but is willing to post a bond if the Court deems it appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. An order freezing Defendants' assets and enjoining and restraining Defendants from dissipating or encumbering any of their assts until the disposition of Plaintiff's claims in this action;

B. An order granting judgment against Defendants, jointly and severally, for compensatory damages of at least $1,100,000, plus interests and costs;

C. An order granting restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unjust enrichment;

D. An order granting Plaintiff treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c);

E. An order granting Plaintiff punitive and exemplary damages;

F. Any such other and further relief in law and/or equity that the Court deems equitable, just, and proper.

Dated: April 26, 2022

HARRIS BRICKEN SLIWOSKI LLP

By: _____
Jihee Ahn
*Attorneys for Plaintiff*
CORY BENSON

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure, Rule 38(b), and Local Rule 38-1, Plaintiff hereby respectfully demands a trial by jury with respect to all issues and claims asserted in this action.

Dated: April 26, 2022

HARRIS BRICKEN SLIWOSKI LLP

By: _____
Jihee Ahn
*Attorneys for Plaintiff*
CORY BENSON